**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **MARK JAY KRUM**<br>**Plaintiff,**<br>**v.**<br><br>**CHUBB LIMITED;**<br><br>**AND**<br><br>**GREAT NORTHERN INSURANCE COMPANY;**<br><br>**AND**<br><br>**CELIA SANTANA;**<br><br>**AND**<br><br>**DALE KRUPOWICZ;**<br><br>**AND**<br><br>**PERSONAL RISK MANAGEMENT SOLUTIONS, LLC,**<br><br>**Defendants.** | **CASE NO.: 1:20-cv-03616-RM-GPG**<br><br>**PLAINTIFF'S REPLY**<br>**OPPOSITION <u>EXHIBITS</u>**<br>**IN SUPPORT OF HIS MOTION**<br>**FOR PARTIAL SJ** |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS AMENDED MOTION FOR PARITAL SUMMARY JUDGMENT AGAINST DEFENDANT GREAT NORTHERN INSURANCE COMPANY REGARDING THE AMOUNT AND CAUSE OF THE THAS LOSS**

## REPLY EXHIBIT NO. 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MARK JAY KRUM,<br><br>Plaintiff,<br><br>vs.<br><br>CHUBB LIMITED, GREAT NORTHERN INSURANCE COMPANY, CELIA SANTANA, DALE KRUPOWICZ, and PERSONAL RISK MANAGEMENT SOLUTIONS, INC.,<br><br>Defendants. | No. 20-cv-03616-RM-GPG |

HYBRID REMOTE VIDEOTAPED DEPOSITION OF MARK JAY KRUM
Los Angeles, California
Friday, November 11, 2022
Volume II

Reported by:
SHARON LINDSAY-MILNIKEL
CSR No. 5335
Job No. CS5559527

PAGES 219 - 525
CONFIDENTIAL PAGES 497-518

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MARK JAY KRUM, Plaintiff, | |
| vs. | No. 20-cv-03616-RM-GPG |
| CHUBB LIMITED, GREAT NORTHERN INSURANCE COMPANY, CELIA SANTANA, DALE KRUPOWICZ, and PERSONAL RISK MANAGEMENT SOLUTIONS, INC., Defendants. | |

Hybrid Remote Videotaped deposition of MARK JAY KRUM, Volume II, taken on behalf of Defendants, at Los Angeles, California, beginning at 8:11 a.m. and ending at 4:49 p.m. on Friday, November 11, 2022, before SHARON LINDSAY-MILNIKEL, Certified Shorthand Reporter No. 5335.

APPEARANCES:

For Plaintiff:

MARK JAY KRUM
In Pro Se
500 East 83rd Street, Suite 8K
New York, New York 10028
(212) 371-2300
markjaykrum@aol.com

For Defendants Celia Santana, Dale Krupowicz and Personal Risk Management Solutions, LLC:

GORDON & REES
BY: JOHN M. PALMERI
Attorney at Law
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@grsm.com

Page 232

opinion, an indoor 25-foot climbing rope, an indoor basketball court, a spectacular ski-in/ski-out to Beaver Creek, Bachelor Gulch and Arrowhead Mountains from my property.

I further told Ms. Santana and Krupowicz that theater that was built and -- and was designed by a company from -- called Frankentek from Medford, New Jersey in 2008 received an award for building the number one theater, rated in theater in the United States, residential theater.

In July of 2010, I told Ms. Santa -- Santana that I had engaged, contractually engaged Frankentek to build the theater and to engineer, provide and install a home automation system for my BC property that I was going to close on September of 2010, approximately three weeks later.

I had told Santana that I had instructed and reached an agreement with Frankentek to ensure that the BC property theater specifications exceeded the specifications for the 2008 theater that Frankentek built and exceeded the expect- -- specifications in acoustic quality and performance level. And I stated to Ms. Santana, quote, that by anyone's professional and industry standards, the theater would be valued in excess of a million

Page 233

dollars, end quote.

On December 24th, 2019, the day of my insured event, Ms. -- I spoke to Ms. Krupowicz by phone to let her know that earlier that morning, a single-actuated sprinkler head inside the BC property failed and released hundreds of gallons of what I told her was ligid -- liquid contaminant throughout all four levels of my residence, what I have described in the litigation as the insured event.

At the time of the insured event, I had made the required premium payment and property insurance coverage payments with Chubb and Great Northern Insurance Company. I was insured under a Chubb Masterpiece policy bearing Policy No. 13787210-02 subject to the terms and conditions, exclusions and endor- -- endorsements contained within that policy, and under Colorado law, in effect from August 15th, 2019 through and including August 15th, 2020.

The policy provided me with dwelling coverage in the amount of 6,897,000 and contents coverage in the amount of $1,379,400 and additional coverages.

At the time of the insured event I was,

Page 234

and I am currently, a, quote, first-party, end quote, claimant asserting an entitlement to benefits as an insured under that policy.

On December 26th, 2019, Chubb general adjuster Tommy V. Le from Colorado and Chubb's building consultant Brian D. Beatty, vice president of J.S. Held, LLC, inspected the damage at my home, the BC property. And I provided them with full and unlimited access to the BC property.

On December 27th, 2020, Chubb's chosen environmental scientist and industrial hygienist Andrew Fredericks spent hours inspecting the entire BC property and the damage caused by the contaminant released by the failed sprinkler head.

On December 27th, three days post insured event, Chubb's scientist performed a visual assessment and used an infrared imaging and contact moisture meter at the BC property to confirm the damage directly and indirectly caused by the insured event, the wood damage.

Immediately following the initial December 27th scientific inspection, I, and Chubb Adjuster Le, were advised by Chubb's scientist Andrew Fredericks that, one, both full bathrooms as well as the two bedrooms on the lower level were

Page 235

identified as sustaining contaminant damage from the insured event; that my daughter's bedroom on the second floor was also substantially impacted both in the bedroom and her bathroom; that the game room on the fourth-level floor down -- game room, bathroom on the fourth-level floor down, as well as the fabric ceiling and stone in the game room, and wood flooring in the game room, and the game room crawl space were all substantially damaged from the liquid contaminant.

The first-floor hardwood floors in the great room, kitchen, dining room, main hallway, foyer, theater room and study were all affected and damaged from the insured event.

Plaster walls in each of the aforementioned areas were impacted during (sic) the entry room bathroom and entry closet, which contained stone fabric -- excuse me -- which contained stored fabric, drapery, carpet, antiques, and antique books, most of which were ruined.

Entry wood columns, great room and kitchen and house chandeliers were all affected and damaged from the insured event.

Fabric walls and furniture in the theater room were affected.

Page 244

expected for the summer of 2011.

On or about August 13th, 2010, I advised Mr. Santana and Ms. Krupowicz and PRMS that on or about September 15th, 2010, I was closing on the BC property which, again, is a luxury residential property in Beaver Creek, Colorado.

As of September 1st, 2010, I advised PRMS that the BR- -- BC property would be used at times by me as a luxury rental property and that in 2011 it was my intention to start substantial multimillion-dollar renovations and construction on the BC property.

In September of 2010, I also advised Ms. Santana and PRMS that was my intention and goal to build the world's greatest ski house and lodge which would generate substantial rental income to me and would now be my most significant financial asset and would be of great assistance to me financially in my professional endeavors.

In early September 2010, I advised Ms. Santana and PRMS that the BC property will be my largest single asset and that it had to be properly insured for any potential loss, quote, no exceptions, end quote, and that I was relying on the PRMS expertise that Santana and Krupowicz told

Page 245

me their firm and they had.

On or about September 10th, 2010, PRMS placed my BC property homeowners insurance with Chartis, effective September 15th, 2010, with maximum coverage, as I had requested, that would provide me with unlimited ELE, extra living expense, and FRV, fair rental value, coverages.

At no time did PRMS, Ms. Krupowicz and Ms. Santana ever communicate directly to me that the BC property was to be insured by PRMS as a, quote, vacation home, end quote. At no time did I ever request PRMS, Ms. Krupowicz and/or Ms. Santana to insure my BC property as a, quote, vacation home, end quote.

On about February 2nd, 2011, I advised PRMS that I would still continue to rent out my BC property as I did the previous year.

On or about April 15th, 2011, I advised PRMS that I would continue to rent my BC property upon completion of my multimillion-dollar renovations, which were to begin later that year in the summer of 2011.

At that time, I specifically discussed with PRMS that the BC property, upon completion of renovations, will be marketed as a high-end luxury

Page 246

residential rental, generating hundreds of thousands of dollars in rental income at nightly rates of over $10,000.

In August of 2011, PRMS advised me that it will be changing my homeowners insurance coverage on the BC property and the New Jersey beach house from Chartis to Chubb and that all my residential insurance coverage, including my ELE and FRV coverages, will remain in place and will provide the, quote, same complete coverage, end quote.

On or about August 12th, 2011, PRMS provided me with its own, quote, comparison, end quote, of coverages by Chartis versus Chubb, upon which I relied; however, PRMS's own, quote, comparison, end quote, failed to disclose to me specifically any difference between Chartis and Chubb regarding maximum ELE and FRV coverage.

In August of 2011, PRMS advised me that all my future insurance premiums must be paid directly by me to Chubb. From 2011 through 2020, I directly paid Chubb in excess of a hundred thousand dollars in insurance premiums. My credit card statements and my personal checks reflected that all premium payments were made to, quote, Chubb Insurance, end quote, or, quote, Chubb Group of

Page 247

Insurance Companies, end quote.

I further received written payment confirmations from, quote, Chubb Group of Insurance Companies, end quote, that, quote, your payment will be posted to our Chubb account, end quote, and, quote, in a world of choices, thank you for insuring with Chubb, end quote.

From August of 2011, through and including December 24th, 2019, PRMS advised me that my, quote, homeowners, end quote, insurance, quote, carrier, end quote, for the BC property and the New Jersey beach house was, quote, Chubb, end quote.

On August 18th, 2011, PRMS, Ms. Krupowicz, Ms. Santana advised me that my insurance, quote, agency, end quote, is PRMS and that my insurance, quote, company, end quote, is, quote, Chubb Group of Insurance, end quote, quote, covering 373 Strawberry Park Road, end quote, the BC property.

In or about August of 2011, PRMS advised me that, quote, Chubb understands what you expect when it comes to insurance, coverage that suits your lifestyle, a policy that gives you choices and no hassles if you have to report a claim, in fact, when it comes to insuring your property and possessions, we, meaning Chubb, offer coverage and

I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath;

That a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction;

That the foregoing transcript is a true record of the testimony given;

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript ( ) was (X) was not requested;

That if the foregoing proceedings were reported stenographically remote from the witness and parties, the transcript of the proceedings reflects the record that I could hear and understand to the best of my ability;

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any party to this action.

//

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: November 21st, 2022

SHARON LINDSAY-MILNIKEL
CSR No. 5335

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MARK JAY KRUM, )
Plaintiff(s), )
) CASE NO.:
v. )
) 1:20-cv-03616-RM-GPG
)
CHUBB LIMITED, GREAT )
NORTHERN INSURANCE COMPANY, )
CELIA SANTANA, DALE )
KRUPOWICZ; and PERSONAL )
RISK MANAGEMENT SOLUTIONS, )
LLC, )
Defendant(s). )

---

THE REMOTE DEPOSITION OF

MARK JAY KRUM

DATE: November 10, 2022

---

VIDEOTAPED DEPOSITION of MARK JAY KRUM, having been duly sworn, was taken in the above-styled and numbered cause on November 10, 2022, from 9:32 a.m. until 4:56 p.m., before LATONIA C. LEWIS, CSR, License Number 14446 in and for the State of California, reported by machine shorthand, via Zoom, pursuant to Notice.

Job No. CS5560920

traffic showing that, in fact, that Celia is upset at Dale and Dale is upset at Chartis, somebody at Chartis because they're not getting back to her or they're not doing what she wanted; there is e-mail traffic showing that. That all created stress for me because I wanted to make sure I was properly insured.

You're asking me now, what's the status with Chartis on September 8, 2011, I don't know, right here, Dale -- Celia is writing -- Dale is writing Celia Chartis is done. So I assume on September 8, 2011, based on this e-mail and based on the fact on September 15, 2011, I was informed insured by Chubb for the D.C. property that, I guess, Dale was right, Chartis is done at this point. They were able to insure me with Chubb, the problem is they didn't tell me I had not the same coverages.

Q. But they sent you the policy. Isn't that true?

A. No.

Q. If they would have sent you the policies, you would have read them, would they not?

A. You're asking me if who sent.

Q. If PMRS sent you the Chubb policy in December of 2011, you would have read it, would you not?

A. I don't know. I don't recall getting that. And you're saying if I got them would I have read them,

IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: November 21st, 2022

SHARON LINDSAY-MILNIKEL
CSR No. 5335