**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **MARK JAY KRUM**<br>**Plaintiff,**<br>**v.**<br><br>**CHUBB LIMITED;**<br><br>**AND**<br><br>**GREAT NORTHERN INSURANCE COMPANY;**<br><br>**AND**<br><br>**CELIA SANTANA;**<br><br>**AND**<br><br>**DALE KRUPOWICZ;**<br><br>**AND**<br><br>**PERSONAL RISK MANAGEMENT SOLUTIONS, LLC,**<br><br>**Defendants.** | **CASE NO.: 1:20-cv-03616-RM-NRN**<br><br>**PLAINTIFF'S RESPONSE AND OPPOSITION EXHIBITS TO DEFENDANT GNIC's MOTION FOR SJ** |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**OPPOSITION EXHIBIT NO. 32**
**Deposition Testimony of Mark Jay Krum**
**November 11, 2022**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MARK JAY KRUM, Plaintiff, | |
| vs. | No. 20-cv-03616-RM-GPG |
| CHUBB LIMITED, GREAT NORTHERN INSURANCE COMPANY, CELIA SANTANA, DALE KRUPOWICZ, and PERSONAL RISK MANAGEMENT SOLUTIONS, INC., Defendants. | |

HYBRID REMOTE VIDEOTAPED DEPOSITION OF MARK JAY KRUM
Los Angeles, California
Friday, November 11, 2022
Volume II

Reported by:
SHARON LINDSAY-MILNIKEL
CSR No. 5335
Job No. CS5559527

PAGES 219 - 525
CONFIDENTIAL PAGES 497-518

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MARK JAY KRUM,
Plaintiff,
vs. No. 20-cv-03616-RM-GPG
CHUBB LIMITED, GREAT NORTHERN INSURANCE COMPANY, CELIA SANTANA, DALE KRUPOWICZ, and PERSONAL RISK MANAGEMENT SOLUTIONS, INC.,
Defendants.

Hybrid Remote Videotaped deposition of MARK JAY KRUM, Volume II, taken on behalf of Defendants, at Los Angeles, California, beginning at 8:11 a.m. and ending at 4:49 p.m. on Friday, November 11, 2022, before SHARON LINDSAY-MILNIKEL, Certified Shorthand Reporter No. 5335.



APPEARANCES:

For Plaintiff:
MARK JAY KRUM
In Pro Se
500 East 83rd Street, Suite 8K
New York, New York 10028
(212) 371-2300
markjaykrum@aol.com

For Defendants Celia Santana, Dale Krupowicz and Personal Risk Management Solutions, LLC:
GORDON & REES
BY: JOHN M. PALMERI
Attorney at Law
555 Seventeenth Street, Suite 3400
Denver, Colorado 80202
(303) 534-5160
jpalmeri@grsm.com



APPEARANCES (Continued):

For Defendant Great Northern Insurance Company:
CLYDE & CO US
BY: AMY M. SAMBERG
Attorney at Law
400 East Van Buren Street, Suite 440
Phoenix, Arizona 85004
(480) 746-4580
amy.samberg@clydeco.us

Also Present:
DAVID KOLLER
PRISCILLA "CRICKET" DYE

Videographer:
JORDAN KYHOS



INDEX


| WITNESS | EXAMINATION |
|---|---|
| MARK JAY KRUM | |
| VOLUME II | |
| BY MR. PALMERI | 229, 461 |
| BY MS. SAMBERG | 391 |


EXHIBITS


| NUMBER | | PAGE |
|---|---|---|
| Exhibit 1014 | Typewritten statement | 256 |
| Exhibit 1015* | Dean Johnson Management Rental Statement dated 12-19-2010 and Check No. 2724 | 260 |
| Exhibit 1016 | Document entitled "Mark Krum Renewal Review" | 304 |
| Exhibit 1017 | E-mail string dated 9-15-11 | 308 |
| Exhibit 1018 | Dean Johnson Management Rental Statement dated 1-10-2011 and Check No. 2740 | 321 |


*Confidential

Page 244

expected for the summer of 2011.

On or about August 13th, 2010, I advised Mr. Santana and Ms. Krupowicz and PRMS that on or about September 15th, 2010, I was closing on the BC property which, again, is a luxury residential property in Beaver Creek, Colorado.

As of September 1st, 2010, I advised PRMS that the BR- -- BC property would be used at times by me as a luxury rental property and that in 2011 it was my intention to start substantial multimillion-dollar renovations and construction on the BC property.

In September of 2010, I also advised Ms. Santana and PRMS that was my intention and goal to build the world's greatest ski house and lodge which would generate substantial rental income to me and would now be my most significant financial asset and would be of great assistance to me financially in my professional endeavors.

In early September 2010, I advised Ms. Santana and PRMS that the BC property will be my largest single asset and that it had to be properly insured for any potential loss, quote, no exceptions, end quote, and that I was relying on the PRMS expertise that Santana and Krupowicz told

Page 245

me their firm and they had.

On or about September 10th, 2010, PRMS placed my BC property homeowners insurance with Chartis, effective September 15th, 2010, with maximum coverage, as I had requested, that would provide me with unlimited ELE, extra living expense, and FRV, fair rental value, coverages.

At no time did PRMS, Ms. Krupowicz and Ms. Santana ever communicate directly to me that the BC property was to be insured by PRMS as a, quote, vacation home, end quote. At no time did I ever request PRMS, Ms. Krupowicz and/or Ms. Santana to insure my BC property as a, quote, vacation home, end quote.

On about February 2nd, 2011, I advised PRMS that I would still continue to rent out my BC property as I did the previous year.

On or about April 15th, 2011, I advised PRMS that I would continue to rent my BC property upon completion of my multimillion-dollar renovations, which were to begin later that year in the summer of 2011.

At that time, I specifically discussed with PRMS that the BC property, upon completion of renovations, will be marketed as a high-end luxury

Page 246

residential rental, generating hundreds of thousands of dollars in rental income at nightly rates of over $10,000.

In August of 2011, PRMS advised me that it will be changing my homeowners insurance coverage on the BC property and the New Jersey beach house from Chartis to Chubb and that all my residential insurance coverage, including my ELE and FRV coverages, will remain in place and will provide the, quote, same complete coverage, end quote.

On or about August 12th, 2011, PRMS provided me with its own, quote, comparison, end quote, of coverages by Chartis versus Chubb, upon which I relied; however, PRMS's own, quote, comparison, end quote, failed to disclose to me specifically any difference between Chartis and Chubb regarding maximum ELE and FRV coverage.

In August of 2011, PRMS advised me that all my future insurance premiums must be paid directly by me to Chubb. From 2011 through 2020, I directly paid Chubb in excess of a hundred thousand dollars in insurance premiums. My credit card statements and my personal checks reflected that all premium payments were made to, quote, Chubb Insurance, end quote, or, quote, Chubb Group of

Page 247

Insurance Companies, end quote.

I further received written payment confirmations from, quote, Chubb Group of Insurance Companies, end quote, that, quote, your payment will be posted to our Chubb account, end quote, and, quote, in a world of choices, thank you for insuring with Chubb, end quote.

From August of 2011, through and including December 24th, 2019, PRMS advised me that my, quote, homeowners, end quote, insurance, quote, carrier, end quote, for the BC property and the New Jersey beach house was, quote, Chubb, end quote.

On August 18th, 2011, PRMS, Ms. Krupowicz, Ms. Santana advised me that my insurance, quote, agency, end quote, is PRMS and that my insurance, quote, company, end quote, is, quote, Chubb Group of Insurance, end quote, quote, covering 373 Strawberry Park Road, end quote, the BC property.

In or about August of 2011, PRMS advised me that, quote, Chubb understands what you expect when it comes to insurance, coverage that suits your lifestyle, a policy that gives you choices and no hassles if you have to report a claim, in fact, when it comes to insuring your property and possessions, we, meaning Chubb, offer coverage and

Page 252

2011 to 2012 policy period, zero rental days because the BC property was under renovation and construction.

2012 to 2013 policy period, 26 rental days.

2013 to 2014, 10 rental days.

2014 to 2015 policy period, 16 rental days.

2015 to 2016 policy period, 10 rental days.

4 of my 6 first policy periods, I rented out the BC property more than the maximum 15 days. During 4 of my 8 first policy periods, prior to the insured event, contained rental periods in excess of 15 days; moreover, I rented out my BC property for 26 days as of August 2011 when PRMS switched me from Chartis to the Chubb policy.

The stated purpose of my 2011-2012 construction and renovations was to build, quote, The World's Greatest Ski House, end quote, for rentals.

In October of 2015, the insured property was offered for rent for 20,000 a day and -- for the entire house and $16,000 a day for the entire house, except what I have identified on my

Page 253

professional website for the BC property as the owner's suite.

In 2015 and 2016, as well as in 2020, the fair rental value to the BC property during peak ski season, identified as December 25th through January 2nd and February 15th through March 31st, was 20,000 a day for the entire BC property and $16,000 a day for the entire BC property, except what is identified as the owner's suite.

For the first few years, prior to the insured event, without interruption, with the intent of renting the BC property at an agreed-upon rental rate, I advertised the BC property for rent on the Internet at the professional website titled, quote, The World's Greatest Ski Lodge, end quote.

On or about November 18th, 2019, I contacted the local Vail real estate broker about obtaining her professional services and listing the BC property for sale and rent in 2020.

On Tuesday afternoon, November 26th, 2019, 8 days later from the earlier conversation, I had another conversation with the real estate broker about her listing the BC property for sale in the spring of 2020 and about listing and marketing the BC property in January and February of 2020 for

Page 254

rent during high-demand ski season in February and March of 2020 and also listing the BC property for rent in the high-demand summer months of July and August of 2020.

On January 1st, 2020, I was contacted by a potential luxury renter from Kansas who found the BC property on the Internet and reviewed my professional rental video and website and wanted to rent the BC property for his family for Presidents' Weekend in February and also in March of 2020.

Prior to February 2020, Ms. Santana, Ms. Krupowicz and PRMS never once advised me that I was requesting ELE accommodations, as a result of the insured event, that were not covered under the policy and/or were in excess of policy limits as they understood them.

On Friday evening, February 7, 2020, Chubb Adjuster Le informed me for the first time that Chubb and Great Northern Insurance Company would only cover ELE for up to 60 days.

From the insured event, through and including February 6th, 2020, for over 6 full weeks, Chubb Adjuster Le, Chubb Manager Witcher, Chubb, Great Northern Insurance Company, PRMS, Ms. Krupowicz, Ms. Santana never once stated in any

Page 255

communication to me that I was only covered for up to 60 days of ELE and that they would not provide coverage for any of the proposed rentals that I was negotiating.

By February 6th, 2020, more than 30 days had passed where I had spent numerous hours, days and weeks researching, visiting and considering properties for rent for a term well in excess of 6 months.

Without the help and assistance of PRMS, Ms. Santana and Ms. Krupowicz, I was required to institute litigation to recover amounts due for my vast theater and home automation systems, my FRV, fair rental value, and my ELE, extra living expense under the policy.

Q Are you -- are you finished?
A Yes, sir.
Q Did you just -- you just read that statement verbatim?
A No.

MR. PALMERI: Can we get a -- let's mark that as a copy, then. That will be Exhibit 1014.

THE REPORTER: 10- -- I'm sorry, I couldn't hear you, Counsel.

MR. PALMERI: 1014.

THE REPORTER: Mr. Krum, this is Sharon, are you ordering a copy of the transcript?
THE WITNESS: Not at this time.
THE REPORTER: Okay. Thank you.
MS. SAMBERG: Thank you, Sharon.
MR. PALMERI: All right.
THE REPORTER: Thank you.
MR. PALMERI: We're adjourned. Thank you.
THE VIDEOGRAPHER: This is the end of Media 2 --
MS. SAMBERG: Oh, wait a second, Mark, did you --
THE VIDEOGRAPHER: -- for the videotaped deposition of Mark Krum --
MS. SAMBERG: Never mind.
THE VIDEOGRAPHER: -- we're going off the record. The time is 4:49 p.m.

(TIME NOTED: 4:49 p.m.)



I, MARK JAY KRUM, do hereby declare under penalty of perjury that I have read the foregoing transcript; that I have made any corrections as appear noted, in ink, initialed by me; that my testimony as contained herein, as corrected, is true and correct.

EXECUTED this _______ day of _______________, 20____, at ______________________, __________________.
(City) (State)

________________________________
MARK JAY KRUM
Volume II



I, the undersigned, a Certified Shorthand Reporter of the State of California, do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were administered an oath;

That a record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction;

That the foregoing transcript is a true record of the testimony given;

Further, that if the foregoing pertains to the original transcript of a deposition in a Federal Case, before completion of the proceedings, review of the transcript ( ) was (X) was not requested;

That if the foregoing proceedings were reported stenographically remote from the witness and parties, the transcript of the proceedings reflects the record that I could hear and understand to the best of my ability;

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any party to this action.
//



IN WITNESS WHEREOF, I have this date subscribed my name.

Dated: November 21st, 2022

SHARON LINDSAY-MILNIKEL
CSR No. 5335