**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **MARK JAY KRUM**<br>**Plaintiff,**<br>**v.**<br><br>**CHUBB LIMITED;**<br><br>**AND**<br><br>**GREAT NORTHERN INSURANCE COMPANY;**<br><br>**AND**<br><br>**CELIA SANTANA;**<br><br>**AND**<br><br>**DALE KRUPOWICZ;**<br><br>**AND**<br><br>**PERSONAL RISK MANAGEMENT SOLUTIONS, LLC,**<br><br>**Defendants.** | **CASE NO.: 1:20-cv-03616-RM-NRN**<br><br>**PLAINTIFF'S RESPONSE AND OPPOSITION EXHIBITS TO DEFENDANT GNIC's MOTION FOR SJ** |

**PLAINTIFF'S RESPONSE AND OPPOSITION TO DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

**OPPOSITION EXHIBIT NO. 41**
**APRIL 26 JS HELD REPORT**

JS | HELD

April 16, 2020

Mr. Steve Magnotta
Chubb
600 Independence Parkway
Chesapeake, VA 23327-4700

RE: ***MARK JAY KRUM RESIDENCE – REQUEST FOR INFORMATION (RFI)***
373 Strawberry Park
Avon, CO 81620
Type of Loss: Water
Date of Loss: December 24, 2019
Claim No.: 047519042569
J.S. Held File No.: 19121566

Dear Mr. Magnotta:

In accordance with your request, the following outlines what has been completed to date, what evaluations are remaining, and what additional questions we have for the Insured's vendor related to the equipment analysis.

On March 10 through 13, we conducted a site visit to visually inspect equipment in the various claimed areas and completed a wipe sample analysis per our February 17 inspection protocol. This protocol was shared with the Insured prior to our site visit inspection. Where possible, we inspected both the exterior and interior of equipment.

The Insured did not have their vendor, Frankentek, or any other vendor present for the equipment inspections. This was requested so that the Insured's vendors could demonstrate their findings from their evaluations. Additionally, since demolition was not completed, we did not have access to the claimed theater speakers. The Insured requested that we limit our inspections to the affected areas on the first floor and lower level. Additionally, after the first day of inspections, the Insured requested that we not interrupt the devices associated with network.

EXHIBIT: 24B
WIT: Kirkpatrick
DATE: 11-18-21
S.R.

tabbies
EXHIBIT 24B
10/15/21 Magnotta VLR

We have provided a schedule outlining the Insured's claim, our observations to date based on the inspections, and our preliminary recommendations. To further evaluate the equipment, we recommend the following:

- The Insured proceed with the scope included in our preliminary evaluations which would allow for further functional testing.
- A joint inspection of the speakers in the theater.
- A joint testing of the low-voltage cabling claimed.

The following questions are derived from our review of the Frankentek January 26th 2020 report. We request that the following information, if available, be provided to further our analysis. Additional requests may be necessary as our analysis progresses.

1. For equipment identified as having "Primary" or "Secondary Damage", please provide the following:
   a. Who evaluated the equipment?
   b. What specific damages were observed?
   c. What specific components or devices failed?
   d. How it was determined that the reported issues are due to the incident.
   e. All supporting documentation and photographs from the evaluation.

2. What testing has been performed on the cabling?
   a. What specific cables were found to have Gylcerin or water contaminent on the cable?
   b. What specific cabling runs were tested?
   c. How was the testing completed?
   d. What specific cabling had failures?
   e. Provide all logs and test reports for the cabling.

3. Provide all humidity and temperature readings from areas containing equipment during the event and during the remediation.

4. Which equipment manufacturers made a site visit to evaluate the equipment?

5. Please provide all reports, damage assessments, photographs, and humidity logs that were provided to the equipment manufacturers.

6. Which manufactures said that 100% of the equipment in the affected areas need to be replaced? Provide the supporting correspondence.

7. Which specific manufacturers stated they would not accept equipment for testing, certifications, or future repair? Provide all correspondence.

8. Please provide the environmental and humidity specifications from the equipment manufacturers.

9. Please explain how Frankentek, Simpletech and CAT or other vendors evaluated the speakers.
    a. Which speakers were found to have glycerin contaminant or water damage?
    b. What testing has been performed
    c. How was the testing measured?
    d. What were the results per speaker?
    e. What copper phase plugs were found to have corrosion?
    f. Provide all supporting documentation and photographs for the evaluation and testing.

10. Which devices were opened for an interior inspection by Frankentek, Simpletech, or other vendors during their evaluation?

11. What specific devices were found to have microdust sticking to the cooling fans and heatsinks due to the contaminant?

12. What testing was done by Frankentek to determine the corrosiveness of the contaminant?
    a. Provide all supporting sampling and testing.

13. What specific electrical anomalies were documented during the incident and remediation. Please provide all support and documentation.
    a. Which fixtures tripped the breakers due to direct water / glycerin contamination?
    b. Which breakers tripped due to remediation equipment?
    c. Please identify the specific breakers tripped and what equipment is connected to those circuits.

14. Please explain how Paul Sabo evaluated the lighting control equipment.

15. Please provide the report and supporting documentation from Paul Sabo regarding their evaluation of the lighting control equipment.

16. What specific dimmers did Frankentek determine to have contaminant that flowed across them?
    a. Provide all support and photographs.

If you have any questions or require additional information, please contact us at (800) 227-5610.

Sincerely,

Anthony Danza
Vice President – Equipment Consulting Practice